IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| VICKY BIRDSONG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 04-0891-CV-W-NKL |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Pending before the Court is Plaintiff Vicky Birdsong's ("Birdsong") Motion for Summary Judgment [Doc. # 15]. Birdsong seeks judicial review of the Commissioner's denial of her requests for disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* The Court finds that the Administrative Law Judge's decision was supported by substantial evidence in the record as a whole.

The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary.[1] Following a review of the entire record, the Court affirms the ALJ's decision.

**I.  Background**

Birdsong filed her application for benefits on December 18, 2002, alleging an

---

[1] Upon review of the record and the law, the Defendant's position is found to be persuasive. Portions of the Defendant's brief are adopted without quotation designated.

1

onset date of July 18, 2000. Birdsong was 44 years old when she filed her application wherein she alleged disability due to a broken heel and torn Achilles tendon and pancreatitis.

### A. Birdsong's Medical Background

Birdsong was hospitalized from March 23 through March 26, 2002, for pancreatitis and diabetes mellitus. Christopher Mullen, M.D., the treating physician, noted that Birdsong drank several cans of beer the night before admission, which exacerbated her abdominal pain. Dr. Mullen also noted that Birdsong's diabetes was stable and controlled by diet, and instructed Birdsong to discontinue use of alcohol. Dr. Mullen noted that Birdsong was not taking prescription medications, even though she had been prescribed insulin for her diabetes. Regarding Birdsong's medical history prior to March 2002, Dr. Mullen noted that she had three episodes of pancreatitis during the previous four years, secondary to her continued abuse of alcohol.

Birdsong was hospitalized again from April 30 to May 6, 2002, after drinking heavily for three days and experiencing abdominal pain. The attending physician diagnosed "acute on top of chronic" pancreatitis, alcohol abuse, and diabetes under diet management.

In November 2002, Birdsong's ankle was treated and the examination revealed diffuse soft tissue swelling and a displaced fracture of the calcaneus. A right foot x-ray also revealed a comminuted fracture with displaced fragments. The attending physical therapist recommended that Birdsong use a wheeled walker and indicated that she could

walk up to 200 feet with rest periods. A few days later, Birdsong received a prescription for a wheelchair.

In December 2002, Jeff Hackman, M.D., noted Birdsong's wound was healing well, status post open reduction and internal fixation of her right calcaneus avulsion fracture. An x-ray showed two screws in the heel and acceptable position of the fracture fragment. Approximately one month later in January 2003, Birdsong reported burning pain in her heel, but an x-ray showed the fracture of the calcaneus with good alignment and position, stabilized by two screws.

Later on January 24, 2003, James Hamilton, M.D., noted Birdsong's right heel fracture was in good position and healing well. Dr. Hamilton removed Birdsong's cast and directed her to start bearing weight using a walker or crutches; he stated that Birdsong would "do fine" and that the fracture needed to strengthen over time.

A few days later, Birdsong reported extreme pain with walking, but the attending physician's inspection of the heel showed no positive findings. The physician recommended that Birdsong stay off the foot for two more weeks, and then begin range of motion exercises and weight-bearing.

In early February 2003, Birdsong reported to the emergency room due to right foot swelling, and physical examination revealed mild erythema with good sensation and pulses. On February 18, Michael Harris, M.D., examined Birdsong at the orthopaedic clinic and noted she had pain in the plantar fascia and tightness in the Achilles tendon, but she was to "fully bear weight" and begin stretching.

Birdsong again reported to the emergency room on March 4, 2003, but she left without being examined. On June 6, 2003, Birdsong was examined in the emergency room and the examiner diagnosed only alcohol intoxication; a nursing note from the same visit indicated that Birdsong was "steadily ambulating." Birdsong left against medical advice.

Birdsong was hospitalized again on June 25, 2003, with abdominal pain due to chronic pancreatitis, which was stable by the time she was discharged on June 28.

In August 2003, Birdsong reported to the orthopedic clinic, where she was examined by Clinton Pickett, D.O., who noted that Birdsong had not been seen since February 2003 and that she missed a May appointment, even though she reported a twisting injury to her ankle in April. Dr. Pickett's examination revealed some swelling of the right ankle, but no tenderness. Birdsong was able to walk on her toes without difficulty. An x-ray revealed displacement of the fragment and that one of the screws in her foot was broken. However, due to Birdsong's "minimal loss of function," Dr. Pickett did not believe operative treatment was necessary.

Birdsong was hospitalized from August 18 to August 22, 2003, with a diagnosis of chronic pancreatitis with sharp pain. Prior to entering the hospital, Birdsong had "been drinking heavily for 2 days" and she "reported drinking approximately 20 beers on the evening that the pain started." Birdsong's examination revealed diffuse tenderness in the abdomen, but no positive musculoskeletal problems. Birdsong was not taking any medication for her diabetes and her abdominal pain was controlled at the time of her

4

discharge.

On September 17, 2003, a clinician's note reflected that Birdsong suffered from mild abdominal tenderness and indicated that Birdsong's pancreatitis and diabetes mellitus were stable.

On December 12, 2003, Birdsong received emergency room treatment for hypoglycemia. Birdsong admitted she was not taking her medication and the examination was positive for alcohol use. Birdsong did not have any complaints of musculoskeletal pain, swelling or weakness. Birdsong had a steady gait.

In early January 2004, Birdsong again reported to the emergency room with poorly controlled blood sugar and diabetes mellitus. The examiner noted that Birdsong was not complying with her medication regimen "on purpose" and Birdsong reported drinking two beers on the day of her examination. Birdsong denied any pain, had normal respiration, and had a steady gait. Birdsong left the hospital against medical advice.

Birdsong was hospitalized from January 22 to January 26, 2004, after she fell down and lost consciousness. Birdsong stated that she had not had anything to drink since November 2003, but she admitted to drinking two beers the morning of January 22, 2004. Birdsong reported that she discontinued use of her diabetes medication two weeks earlier.

On February 6, 2004, Birdsong received a prescription for medication because her blood sugar was elevated. On February 27, 2004, Birdsong was admitted to the emergency room after her husband found her unconscious. Birdsong was diagnosed with

5

hypoglycemia and a history noted indicated that she had been taking insulin, but she was not checking her blood sugar or eating food. The note also reported continued alcohol use.

A few days later on March 6, Birdsong was again admitted to the emergency room with low blood sugar after being found unconscious. Birdsong reported drinking 72 ounces of malt liquor.

On March 26, 2004, Birdsong reported to the emergency room for hypoglycemia. The examiner noted that Birdsong smelled of alcohol. Birdsong was given some food and orange juice and she was stable at the time of discharge.

Birdsong was seen at the emergency room on April 9 and May 14, 2004, for alcohol intoxication.

### B. The Administrative Hearing

#### 1. *Birdsong's Testimony*

The ALJ conducted an administrative hearing on July 14, 2004, whereat Birdsong testified. Birdsong stated that she had been homeless for over two years and that she stayed at area shelters. She indicated that she spent much of her day reading at the library and attending weekly church services. Birdsong testified that she could stand for approximately 30 minutes at a time or walk for 15 minutes for "a block or so," but later testified that she could not stand for 30 minutes. She stated she would sit for hours after standing because of the swelling in her feet and pain in her legs. Birdsong estimated she could lift approximately five pounds.

6

Regarding her diabetes, Birdsong testified that she was insulin-dependent and she took the medication four times per day. When her blood sugar was high, she reported dizziness, shaking, sweating, and confusion. Birdsong also stated that she had tingling, cramping, and difficulty grasping items with her hands, as well as vision difficulties. Birdsong testified that she kept her insulin in a cup filled with ice because she was homeless and did not have a storage space for it. Regarding her alcohol abuse, Birdsong stated she was "stopping" and that she was aware that it aggravated her diabetic condition.

Regarding her heel and foot injury, Birdsong testified that she had hardware inserted into her foot after her right heel bone was injured. One of the pins in her heel broke. Birdsong was in a cast and used a wheelchair for a five-month time period, but she was not using one at the time of her hearing. She reported she continued to have swelling in her right foot a "couple of times a month" or more, lasting for "days" at a time. She elevated her foot for one hour per day to reduce the swelling.

In addition to her heel injury, Birdsong testified that she had two separate fractures to her left shoulder, and she could not carry anything with her left arm.

Regarding her panchreatitis, Birdsong testified she had chronic pain, which she characterized as a "10" on a scale of 1 to 10. Birdsong stated the pain occurred "a couple of times a month" and it lasted from one day to one week. Birdsong also testified that she had chronic bronchitis and that she took medication for sleeping difficulties and acid reflux disease.

### 2. *Vocational Expert Testimony*

Denise Waddell ("Waddell") testified as a vocational expert at the administrative hearing. Waddell testified that Birdsong had no earnings during the 15 years prior to the hearing that were sufficient to establish substantial gainful activity. The ALJ posed a hypothetical question to Waddell, which assumed an individual of Birdsong's age and education. The individual could perform a full range of sedentary work, with a sit/stand option, no repetitive overhead lifting or reaching with the left arm. The individual required a clean working environment, free of dust, smoke and other pollutants, and could not work at unprotected heights or around dangerous machinery. Waddell testified that such an individual could perform the positions of information clerk, production checker, or surveillance system monitor.

### C. The ALJ's Decision

The ALJ found that Birdsong had insulin-dependent diabetes mellitus, a history of pancreatitis, status post right foot fracture with open reduction and internal fixation, a history of a left clavicle fracture, and a history of alcohol abuse. The ALJ found that Birdsong's testimony regarding the severity of her impairments was not credible because, among other reasons, her non-existent work history, the absence of any opinion evidence regarding her disability from any treating or examining physician, and her history of non-compliance with medications and medical advice. Therefore, the ALJ found that Birdsong had the residual functional capacity ("RFC") to perform a range of sedentary work, subject to the limitations set forth in the hypothetical inquiry given to Waddell

during the hearing.

## II. Discussion

### A. ALJ's Determinations Regarding Listing 5.08

Birdsong alleges that the ALJ failed to consider whether the functional effects of her combined impairments were equivalent to the criteria of Listing 5.08. As an initial matter, Birdsong alleges the ALJ failed to properly consider the combined effect of her impairments vis-a-vis the applicability of Listing 5.08. An ALJ has sufficiently considered impairments in combination when the ALJ has separately discussed each impairment, the complaints of pain and the daily activities, and made a finding that the plaintiff's impairments did not prevent the plaintiff from performing past relevant work or other work in the national economy. *Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992). "To require a more elaborate articulation of the ALJ's thought processes would not be reasonable." *Id.* After a review of the ALJ's decision, it is clear he fully considered each of Birdsong's impairments, the subjective and objective evidence relating to each impairment, and determined that Birdsong retained the RFC to perform work available in the national economy. Therefore, the ALJ's analysis regarding the applicability of Listing 5.08 is supported by substantial evidence in the record.

To the extent that Birdsong alleges the ALJ improperly applied the criteria of Listing 5.08, that argument must fail. Birdsong alleged that her "combined impairments may be the functional equivalent" of the criteria set forth in Listing 5.08. In order for a plaintiff to show that the plaintiff's impairment matches a Listing, the impairment must

9

meet all specified medical criteria. *Deckard v. Apfel*, 213 F.3d 996, 997 (8th Cir. 2000). Listing 5.08(B)(4) facially applies to Birdsong because it references "uncontrolled diabetes mellitus due to pancreatic dysfunction with repeated hyperglycemia, hypoglycemia, or ketosis." However, Listing 5.08(B)(4) also requires that a plaintiff demonstrate weight loss due to the condition. The Listing requires the claimant demonstrate weight loss for at least three months and evidence that this weight is expected to persist at this level for at least 12 months. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 5.08. At Birdsong's height, which is five feet five inches, her weight must be less than 100 pounds to meet the criteria of Listing 5.08. There is no evidence Birdsong ever satisfied the weight threshold. Therefore, the ALJ's finding that Listing 5.08 does not encompass her impairments is supported by substantial evidence in the record.

### B. Birdsong's Credibility

Birdsong contends the ALJ did not properly consider her subjective allegations. Although Birdsong appears to argue that the ALJ's consideration of the consistency of her complaints with the objective evidence was inappropriate, the Eighth Circuit holds that the absence of an objective medical basis to support the degree of a claimant's subjective complaints is an important factor in evaluating the credibility of the claimant's testimony and complaints. *Russell v. Sullivan*, 950 F.2d 542, 545 (8th Cir. 1991); *Edwards v. Sec'y of Health & Human Services*, 809 F.2d 506, 508 (8th Cir. 1987). In the instant case, there are several inconsistencies between Birdsong's subjective reports regarding her impairments and the objective evidence. The objective evidence reflects

10

that Birdsong's diabetes is controlled when she complies with her medication and diet regimen. At the hearing, Birdsong testified she suffered from diabetic comas in 2000 and June 2003, but there is no evidence to support these claims. To the extent that Birdsong was treated for exacerbations of her diabetes, she reported in each instance that she had not complied with her medication prescriptions and, on several occasions, she indicated that she had consumed alcohol prior to the exacerbation of her condition.

Regarding her pancreatitis, the objective evidence does not support Birdsong's testimony at the hearing. Birdsong testified that her abdominal pain was a "10" on a scale of 1 to 10 and that the pain occurred "a couple of times a month" lasting one day to one week. However, Dr. Mullen's notes reflect that Birdsong told him she had only three episodes of pancreatitis pain in the preceding four years. Birdsong was treated for abdominal pain due to pancreatitis in May 2002, June 2003, and August 2003, which would suggest that her pancreatitis flares up one to two times annually rather than monthly as asserted by Birdsong. Thus, the objective evidence of Birdsong's pancreatitis-related pain does not support her claim about the frequency or severity of the pain.

Regarding Birdsong's right heel injury, the medical records revealed only a temporary limitation. Birdsong's injury occurred in November 2002. Her cast was removed in January 2003 and she was directed to begin full weight bearing in February 2003 as part of her physical therapy. In March 2003, Birdsong was observed "steadily ambulating." In August 2003, she was capable of walking without difficulty and Dr.

11

Pickett noted that she suffered from "minimal loss of function." Thus, the objective medical evidence does not support her claim of a debilitating injury to her right heel.

The duration of Birdsong's alleged disability period is also unsupported by the objective medical evidence. Birdsong alleged an onset date of July 2000, but there are no medical records prior to March 2001. Thus, any claim for benefits prior to March 2001 is not supported by the evidence in the record.

The ALJ did not, as Birdsong appears to suggest, discredit her subjective allegations solely on the basis of inconsistencies with the objective evidence. The ALJ also looked to Birdsong's poor work history and the fact that no treating or examining physician has opined that she is disabled or that she suffers from any long-term debilitating impairment. Both of these are acceptable factors for an ALJ to consider in weighing a claimant's credibility. *See Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001) (poor work history); *Young v. Apfel*, 221 F.3d 1065, 1069 (8th Cir. 2000) (lack of restrictions by treating physician).

The ALJ also considered Birdsong's non-compliance with her medication and diet regimen in evaluating the severity of her impairments. Birdsong admitted to her physicians that she intentionally stopped taking her diabetes medication and that she did not comply with diet guidelines for diabetic patients. Again, this is an appropriate factor for an ALJ to consider. *See Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995).

The ALJ relied on a myriad of factors in evaluating Birdsong's credibility and his finding is supported by substantial evidence in the record. Therefore, the Court will

12

Case 4:04-cv-00891-NKL    Document 19    Filed 08/01/05    Page 12 of 15

Pickett noted that she suffered from "minimal loss of function." Thus, the objective medical evidence does not support her claim of a debilitating injury to her right heel.

The duration of Birdsong's alleged disability period is also unsupported by the objective medical evidence. Birdsong alleged an onset date of July 2000, but there are no medical records prior to March 2001. Thus, any claim for benefits prior to March 2001 is not supported by the evidence in the record.

The ALJ did not, as Birdsong appears to suggest, discredit her subjective allegations solely on the basis of inconsistencies with the objective evidence. The ALJ also looked to Birdsong's poor work history and the fact that no treating or examining physician has opined that she is disabled or that she suffers from any long-term debilitating impairment. Both of these are acceptable factors for an ALJ to consider in weighing a claimant's credibility. *See Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001) (poor work history); *Young v. Apfel*, 221 F.3d 1065, 1069 (8th Cir. 2000) (lack of restrictions by treating physician).

The ALJ also considered Birdsong's non-compliance with her medication and diet regimen in evaluating the severity of her impairments. Birdsong admitted to her physicians that she intentionally stopped taking her diabetes medication and that she did not comply with diet guidelines for diabetic patients. Again, this is an appropriate factor for an ALJ to consider. *See Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995).

The ALJ relied on a myriad of factors in evaluating Birdsong's credibility and his finding is supported by substantial evidence in the record. Therefore, the Court will

affirm the ALJ's decision denying Birdsong benefits.

### C. Birdsong's RFC

Birdsong appears to allege that the RFC determination is solely a medical question, *i.e.*, a determination based only on the medical evidence. However, the Eighth Circuit has held that the RFC is a determination based on all the evidence in the record that the ALJ deems to be credible. *Dykes v. Apfel*, 223 F.3d 865, 866-67 (8th Cir. 2000); *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). In the instant case, the ALJ calculated Birdsong's RFC based on the medical evidence in the record as well as the other evidence that he deemed to be credible. Given that the ALJ's credibility determination is supported by substantial evidence, as noted in the previous section, the ALJ's calculation of Birdsong's RFC is also supported by substantial evidence in the record.

To the extent that Birdsong argues the Drug Addiction & Alcoholism ("DAA") regulations apply to this proceeding, that claim must fail. Under the DAA regulations, the ALJ must consider the impact of the substance addiction only if the ALJ finds a claimant is disabled and there is evidence of an addiction. Thus, the existence of a disabling impairment is a condition precedent to the application of the DAA regulations. *See* 20 C.F.R. § 416.935 ("If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability . . . ."); *Brueggemann v. Barnhart*, 348 F.3d 689, 694-95 (8th Cir. 2003) ("The plain text of the

13

relevant regulation requires the ALJ first to determine whether [a claimant] is disabled. . . . If the gross total of a claimant's limitations, including the effects of substance use disorders, suffices to show disability, then the ALJ must next consider which limitations would remain when the effects of the substance use disorders are absent.") In the instant case, the ALJ did not find that Birdsong was disabled; therefore, the ALJ was not compelled to apply the DAA guidelines. Thus, the ALJ's calculation of Birdsong's RFC is supported by substantial evidence in the record.

### D. Birdsong's Ability to Perform Work

Birdsong argues that the hypothetical question posed by the ALJ to Waddell was flawed because the ALJ did not include "functional restrictions imposed by her pain" or her ability to "sustain employment." Birdsong does not point to any specific functional limitations which should have been included in the RFC or to any evidence of her inability to "sustain employment." The hypothetical question posed to Waddell was proper because it reflected Birdsong's testimony and the impairments the ALJ found to be credible. *Haggard v. Apfel*, 175 F.3d 591, 595 (8th Cir. 1999). Because the hypothetical was properly formulated, Waddell's testimony that Birdsong could perform work that exists in the national economy constitutes substantial evidence that supports the ALJ's decision. Therefore, the Court will affirm the ALJ's findings.

## III. Conclusion

An examination of the ALJ's decision reveals that it is supported by substantial evidence on the record as a whole. Accordingly, it is hereby

ORDERED that Birdsong's Motion for Summary Judgment [Doc. # 15] is DENIED. The decision of the Commissioner is affirmed.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

DATED: August 1, 2005
Kansas City, Missouri